# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| STEPHEN ALEXANDER, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> -against- <br><br> FRANKLIN RESOURCES, INC., FRANKLIN ADVISERS, INC. and FRANKLIN/TEMPLETON DISTRIBUTORS, INC., <br><br> Defendants. | Civil Action No. 2:07-cv-00848-WJM-MF |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**POLLACK & KAMINSKY**
114 West 47th Street
New York, New York 10036
Tel.  (212) 575-4700

**MCCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel.  (973) 622-4444

## Preliminary

Defendants move, pursuant to Rules 12(b)(1) and (6) Fed.R.Civ.P., to dismiss the Class Action Complaint ("the Complaint") for failure to state a legally cognizable claim.

## A word on Mr. Alexander

Mr. Alexander, the Plaintiff, is nothing if not persistent.

In 2004 he brought virtually this same case in this Court, alleging a "kickback scheme" by Franklin Templeton with respect to the use of portfolio brokerage in their mutual funds. *See In re Franklin Mutual Funds,* No. 04-982 (WJM). In 2005 this Court dismissed his case. See Opinion of September 9, 2005. Mr. Alexander sought reconsideration. That motion was denied by this Court. See Opinion of December 28, 2005. Mr. Alexander then filed an amended complaint styled "Second Amended Derivative Consolidated Complaint." That amended complaint was dismissed by this Court with prejudice. See Opinion of March 13, 2007.

Mr. Alexander then filed a Notice of Appeal to the Third Circuit, only to withdraw it before the appeal could be heard. See Order of the Court of Appeals, May 18, 2007.

Having struck out in New Jersey on his ill-conceived case, Mr. Alexander decided to try his luck in California before a judge whom he thought would be more sympathetic to his claim. He was wrong. That judge (Hon. Susan Illston) denounced Mr. Alexander and his counsel (Messrs. Gutride Safier LLP) for "forum shopping." Judge Illston, recognizing that the case in California was substantially identical to the case that had been brought before this Court by Mr. Alexander, transferred the California action (*i.e.* this action) to this Court. See Opinion of February 14, 2007.

Ever persistent, Mr. Alexander sought re-transfer of this action back to California. This Court denied that motion. See Letter Opinion of June 9, 2007. In so doing, this Court noted the specific finding by Judge Illston that:

> … the allegations in the action [i.e. this action] and the allegations in *In re Franklin Mutual Funds* were [are] substantially similar.

This Court also quoted Judge Illston's damning statement about Mr. Alexander and his counsel that:

> One could reasonably infer forum shopping here, where the same plaintiff represented by the same law firm filed a similar lawsuit in New Jersey, and after receiving unfavorable rulings from that court [i.e. Hon. William J. Martini], filed the instant case.

It is time to bring an end to Mr. Alexander's game of "judicial pinball" and this Motion to Dismiss seeks to do just that.

### Point I —
### The Class Action Complaint should be dismissed:
### as this Court has previously held, "all of plaintiffs'
### alleged injuries are derivative", not direct.

The gravamen of this action is articulated in paras. 2-6 of the Complaint. We quote in full:

> 2.   During the Class Period, to the detriment of its investors, the Franklin Funds participated in an insidious kickback scheme whereby Defendants used the assets of Franklin Funds investors for improper and undisclosed means, namely paying millions of dollars in illegal kickback payments and other improper incentives to broker/dealers to push Franklin Funds on unwitting investors.

> 3. Defendants, in clear contravention of their disclosure obligations and fiduciary responsibilities to investors, pursued abusive and unlawful sales practices of mutual funds to benefit themselves by paying these kickbacks. The California Attorney General also has sued Defendants, stating that "the payments are little more than kickbacks to buy preferential treatment. Investors deserve to know that. The law Franklin Funds violated is based on that simple principle."

4.  Realizing that disclosure of this scheme and the inherent conflicts of interest it created would undermine any investment recommendation to purchase Franklin Fund mutual funds, Defendants failed to disclose any of their improper conduct to Plaintiff and other members of the Class, thereby concealing information significant to any reasonable person deciding how to invest his or her money.

5.  Specifically, the Investment Adviser and Distributor Defendants (as defined below) are named as Defendants because they created undisclosed material conflicts of interest by entering into revenue-sharing agreements with brokerages to push investors into the Franklin Funds, regardless of whether such investments were in the investors' best interests. The Investment Adviser and Distributor Defendants financed these arrangements by illegally charging excessive and improper fees to the Franklin Funds investors that should have been invested in the underlying portfolio. In doing so, the Franklin Fund Investment Adviser and Distributor Defendants breached their fiduciary duties to the Franklin Funds investors.

6.  In other words, Defendants' undisclosed incentive arrangements operated as a fraudulent scheme that exploited the misplaced trust of Franklin Funds investors. Moreover, it was also financially damaging to Franklin Funds investors because the return on the Franklin Funds were diminished due to the improper payments paid from the assets of Franklin Funds investors that were used as kickbacks to reward broker/dealers for pushing the Franklin Funds. Furthermore, Plaintiff and other members of the Class paid fees and commissions that they would not have paid otherwise had the kickback scheme been disclosed, and, as result, received lower returns from their investments.

This Court, in *In re Franklin Mutual Funds,* described the alleged "kickback" scheme asserted by Mr. Alexander in that action.  We quote the essence of this Court's description:

Plaintiffs allege that defendants (collectively referred to as "Franklin" in the Complaint) in conjunction with securities brokers engaged in a kickback scheme that benefitted everyone involved but the Funds and their shareholders. Essentially, the defendants made undisclosed payments to brokers to encourage them to push the Franklin Funds on unsuspecting investors. This practice was known as a "shelf-space" arrangement. (*Id.* at ¶ 48). In accordance with this arrangement, the brokers would give Franklin Funds priority

placement when encouraging investors, *i.e.,* their clients, to invest in mutual funds. This led to more people investing in the Franklin Funds, causing the net asset value of the Funds to grow. As the net asset value of the Funds grew, the defendants began to collect greater compensation because they charged fees as a percentage of net asset value. As they collected greater compensation, they in turn, continued to make payments to brokerage firms to induce brokers to steer more investors into the Funds. (*Id.* at ¶ 2). And as the circle continued, and the Funds expanded, the brokers and defendants reaped the pecuniary rewards while the investors were left owning shares in ever-larger, less dynamic mutual funds laden with excessive fees.

\* \* \*

Franklin allegedly entered into "shelf-space" arrangements with several brokerages.... Defendants allegedly concealed these arrangements, and the concomitant shifting of monies from the Funds to the brokerages, by not disclosing this information in the Franklin Funds' prospectuses [footnote omitted] or other public filings. This created potential conflicts of interest with brokers, who may have steered unwitting investors into the Franklin Funds for the sole purpose of increasing their commissions. Further, Franklin Funds shareholders were unaware at that time that fund assets were being depleted in a manner inimical to fund liquidity and performance. 388 F.Supp.2d 451, 457-58.

Thus, the "kickback scheme" complained of by Mr. Alexander in *In re Franklin Mutual Funds* was the very same "kickback scheme" complained of in this action. Indeed, as this Court itself noted (Letter Opinion of July 9, 2007):

On November 16, 2006, while *In re Franklin Mutual Funds* was pending before this Court, Alexander filed *a virtually identical action* in the United States District Court for the Northern District of California. (emphasis supplied)[1]

This Court, in a well-reasoned and careful Opinion, then held that the "kickback scheme" in *In re Franklin Mutual Funds* involved derivative not direct claims and dismissed all

---

[1] The omissions alleged in the Complaint (para. 32(a), (b) and (c)) are copied word-for-word from one iteration of the complaint in *In re Franklin Mutual Funds*, i.e. the Consolidated Amended Complaint (para. 119(a), (c) and (d)).

4

purportedly direct claims. We quote the crucial holding[2]:

### III.  Nature of the Asserted Claims--Direct vs. Derivative

*  *  *

[T]he Court concludes that all of plaintiffs' alleged injuries are derivative.  Because the excessive fees and charges reduced the net asset value of the funds and, in turn, reduced the net asset per share value, the plaintiffs did not sustain an injury distinct from that suffered by the funds.  As articulated by the Second Circuit, "[u]nderwriter fees, advisory fees, and other transaction costs incurred by a corporation decrease share price primarily because they deplete the corporation's assets, precisely the type of injury to the corporation that can be redressed under Maryland law only through a suit brought on behalf of the corporation." *Strougo v. Bassini*, 282 F.3d 162, 174 (2d Cir. 2002); *see also Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 490 (N.D.Ill.1999) ("Diminution in value of the common stock due to advisory fees paid by the Funds is an injury to the Funds, and any harm to the plaintiffs as common shareholders is derivative in nature."); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2000 WL 10211, at * 1, *4 (SDN.Y. Jan.6, 2000) (finding that undisclosed, self-dealing transactions by the portfolio manager and heavy investment in risky "micro-cap" stocks were derivative causes of action); *Blasberg v. Oxbow Power Corp.*, 934 F.Supp. 21, 26 (D.Mass. 1996) ("If a plaintiff alleges mismanagement of funds, embezzlement or breach of fiduciary duty resulting in the diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor."); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2003) (finding that diminution in value of the fund due to purchases of securities for the fund at inflated prices and payment of excessive advisory fees is derivative). Consequently, the injuries alleged in the Complaint are derivative.

In summary, the Court must dismiss Counts One through Four and Six through Ten because they are improperly pleaded as direct Counts.  388 F. Supp. 2d at 462, 464. (emphasis supplied)

The same result should obtain here, and the Complaint should be dismissed because each and every Count is improperly pleaded as a direct Count.

---

[2] Additionally, under principles of res judicata and collateral estoppel, this case is barred by the holding in *In re Franklin Mutual Funds*.

### Point II —
### <u>Other grounds for dismissal</u>

There are numerous other grounds for dismissal of the Complaint, as set forth hereinbelow.  If and when this Court requests briefing of these other grounds, we stand ready to provide same.  However, because the failure of the Complaint to plead *any* derivative claim is transcendent, we see no reason to burden this Court with an extended discussion of these additional grounds at this time.  The grounds include the following:

- res judicata and collateral estoppel, see e.g. *Byrd v. City of Philadelphia*, 2007 WL 2421797 (3rd Cir. Aug. 28, 2007)

- failure to plead or comply with the applicable statutes of limitations for claims under the Securities Act and the Exchange Act, see e.g. 15 U.S.C. § 77m; 28 U.S.C. § 1658(b)

- inapplicability of the "fraud on the market" theory to sales of mutual fund shares, see e.g. *In re Morgan Stanley and Van Kampen Mutual Fund Sec. Litig.*, 2006 WL 1008138 at *9 (S.D.N.Y. April 18, 2006)

- failure to plead fraud claims with the requisite specificity, see e.g. *In re Merrill Lynch Inv. Management Sec. Litig.*, 434 F. Supp. 2d 233, 239 (S.D.N.Y. 2006)

- failure to plead facts demonstrating *scienter*, see e.g. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2510 (June 21, 2007)

- failure to plead facts demonstrating "loss causation", see e.g. *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 588-91 (S.D.N.Y. 2006)

- immateriality of the alleged omissions, see e.g. *In re Merrill Lynch Inv. Management Sec. Litig.*, 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006)

- absence of a duty of disclosure as to the alleged omissions, see e.g. *In re Merrill Lynch Inv. Management Sec. Litig.,* 434 F. Supp. 2d 233, 238 (S.D.N.Y. 2006)

- absence of secondary liability where there is no primary liability, see e.g. *In re Salomon Smith Barney Mutual Funds Fees Litig.,* 441 F. Supp. 2d 579, 591 (S.D.N.Y. 2006)

Each of these grounds is well-founded and, either individually (as to some issues) or together (as to all issues), requires dismissal of the Complaint. However, as indicated, because there is such a glaring failure to plead <u>any</u> derivative claim, and because the claims are derivative in nature, we do not feel it appropriate or necessary to burden the Court with a full exposition of these grounds at this time.[3]

## Conclusion

The Complaint should be dismissed.

Dated: September 25, 2007

Respectfully submitted,

**POLLACK & KAMINSKY**

/s/ Daniel A. Pollack

by:_____

Daniel A. Pollack
Edward T. McDermott
Anthony Zaccaria

---

[3] This is particularly so because Mr. Alexander's Counsel has stated, at various times, their intention to file an amended complaint, but has failed and refused to do so prior to this motion. They are obviously "playing games", waiting to see the content of our motion before filing an amended complaint. This is, to say the least, a regrettable practice, potentially causing extensive unnecessary work.

7

114 West 47th Street
New York, New York 10036
Tel.  (212) 575-4700


**MCCARTER & ENGLISH, LLP**

     /s/  Gregory J. Hindy
by:_____
     Gregory J. Hindy

Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Tel.  (973) 622-4444

8